ON PETITIONS FOR REHEARING EN BANC
PER CURIAM.
ORDER
Appellees U.S. Bank National Association and U.S. Bancorp and appellees PNC Bank National Association; Santander Bank, N.A.; and Nationwide Bank filed separate petitions for rehearing en banc. A response to the petitions was invited by the court and filed by the appellant Secure Axcess, LLC. Two motions for leave to file amici curiae briefs were also filed and granted by the court.
The petitions were referred to the panel that heard the appeal, and thereafter the petitions, response, and briefs of amici curiae were referred to the circuit judges who are in regular active service. A poll was requested, taken, and failed.
Upon consideration thereof,
IT IS ORDERED THAT:
The petitions for panel rehearing are denied.
The petitions for rehearing en banc are denied.
The mandate of the court will be issued on June 13, 2017.
Taranto, Circuit Judge, with whom Moore, Circuit Judge, joins, concurring in the denial of rehearing en banc.
This case involves a targeted and time-limited program — “a transitional post- *999 grant review proceeding for review of the validity of covered business method [CBM] patents.” Leahy-Smith America Invents Act (AIA) § 18(a)(1), Pub. L. No. 112-29, 125 Stat. 284, 329 (2011). The program is now more than halfway through its specified eight-year life; it is set to expire in a little over three years. AIA § 18(a)(3). The program has consistently been small in scale, unlike the permanent program for inter partes reviews (IPR), 35 U.S.C. §§ 311-319, and the issue presented in this case has arisen only rarely. Although the statute grants relevant rulemaking authority to the Director of the Patent and Trademark Office (PTO), AIA § 18(a)(1), the legal issue comes to this court unaccompanied by any regulation except one that, regarding this issue, merely incorporates the statutory language. 37 C.F.R. § 42.301(a). On the question thus presented, the panel opinion in this case adopts a resolution that soundly resolves an ambiguity in the statutory language and is consistent with every one of our precedents and with a number of Patent Trial and Appeal Board decisions dating to when the program began. In these circumstances, further review of the CBM issue here would be a poor use of judicial resources. Should an extension of the CBM program in some form be deemed desirable, congressional redrafting is a better process through which to address the issues raised by the statute’s current language.[1]
The statutory language defines the essential gateway qualification for entry into the CBM program: a CBM patent is one “that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service.... ” AIA § 18(d)(1) (emphasis added). That language makes one thing unambiguously clear and leaves a familiar ambiguity as to a second textual issue.
The clear prescription is that what counts is what the patent claims — which, as the panel explained, is a matter of proper claim construction, in which the specification plays a large role (the roster of litigation defendants does not). In this case, there is not even a contention that any claim, properly construed, incorporates any requirement based on the specification’s mention of banks or any reference to “use[] in the practice, administration, or management of a financial product or service.” AIA § 18(d)(1). It is undisputed that the claims in this case all apply to certain computer access technologies, whether or not they are used in the practice, administration, or management of a financial product or service.
The second textual issue, addressing the words that follow “claims” in section 18(d)(1), is whether the verb “claims” applies to both the “method or corresponding apparatus” language and the “used in the practice, administration, or management of a financial product or service” language or, instead, applies just to the “method or corresponding apparatus” language. This is a common type of ambiguity where a *1000 verbal phrase precedes a predicate that expressly or implicitly has two parts. Cf. Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 760-61, 766, 131 S.Ct. 2060, 179 L.Ed.2d 1167 (2011) (recognizing ambiguity as to whether, in the phrase “induces infringement,” the implicit knowledge requirement in “induce” applies not just to the act that infringes but also to its infringing character; resolving the ambiguity by requiring knowledge of both). The panel resolved the ambiguity by reading “claims” as reaching both parts of the predicate (much as Global-Tech did for its similar ambiguity): the latter portion (“used in ... ”) as well as the former (“method or corresponding apparatus ... ”) must be referenced among what is claimed, explicitly or implicitly, in at least one claim of the patent.
That resolution is not just a textually familiar one; it is in accord with all of our court’s precedents. Even before Unwired Planet, LLC v. Google Inc., 841 F.3d 995 (Fed. Cir. 2016), we read section 18(d)(1) in this way. In Blue Calypso, LLC v. Groupon, Inc., 815 F.3d 1331 (Fed. Cir. 2016), we explained that “§ 18(d)(1) directs us to examine the claims when deciding whether a patent is a CBM patent.” Id. at 1340. And in approving the standard applied by the Board in a number of decisions that had rejected CBM status, we said: “each of these cases properly focuses on the claim language at issue and, finding nothing explicitly or inherently financial in the construed claim language, declines to institute CBM review.” Id. (emphases added). The panel opinion in the present ease reflects the same interpretation.
All of our precedents also accord with this interpretation on their facts. Each of our cases finding a petition proper under the CBM program has involved a reference to a financial element (shorthand for the statutory “used in ...” phrase) in at least one claim. In Blue Calypso, the language of claim 1 of the patent at issue— “subsidizing the qualified subscriber according to the chosen subsidy program,” id. at 1339 (quoting U.S. Patent No. 7,664,-516, col. 7, lines 39-40) — established that “the claims of the Blue Calypso Patents are directed to methods in which advertisers financially induce ‘subscribers’ to assist their advertising efforts,” id. at 1340. Financial claim elements were present, too, in SightSound Technologies, LLC v. Apple Inc., 809 F.3d 1307, 1311, 1315-16 (Fed. Cir. 2015) (claiming methods for “selling the desired digital video or digital audio signals to [a party] for a fee through telecommunications lines”), and Versata Development Group, Inc. v. SAP America, Inc., 793 F.3d 1306, 1311-13, 1327 (Fed. Cir. 2015) (claiming product grouping and pricing software).
The same is true of DataTreasury’s Ballard patents, U.S. Patent Nos. 5,910,988 and 6,032,137, which helped prompt enactment of the CBM program. See DataTreasury Corp. v. Fid. Nat’l Info. Servs., Inc., 669 Fed.Appx. 572, 573 (Fed. Cir. 2016) (affirming the Board’s rejection of challenged claims of the ’988 and ’137 patents in CBM proceedings), cert. denied, — U.S.—, 137 S.Ct. 1338, 197 L.Ed.2d 520 (2017). Each of the two Ballard patents contains at least one claim directed to “the practice, administration, or management of a financial product or service.” For example: In the ’137 patent, every independent claim (thus every claim) contains a requirement regarding “transactions from checks.” ’137 patent, claims 1, 26, 42, 43. In the ’988 patent, claims 3-8, 28, 45, 50, 87, 92, 96, 101, and 113 refer to “electronic transactions from credit cards, smart eards[,] and debit cards”; claims 51, 55, 64, 70, 75-77, and 102-109 refer to credit cards, debit cards, credit-card transactions or statements, or bank statements; and more generally, every independent claim *1001 (thus every claim) contains a requirement regarding “receipts” (and some also refer to “transactions”), ’988 patent, claims 1,16, 42, 46, 84, 88, 93, 97, 102, 106, 110, 114, 118, 121. Those patents plainly are CBM patents under the panel ruling in the present case. Nothing similar appears, expressly or by construction, in the claims of the patent at issue here.
The panel’s reading of the statute accords as well with several Board decisions, dating back to the launching of the CBM program, that rejected CBM status for similar reasons. See Fairchild Semiconductor Corp. v. In-Depth Test LLC, CBM2015-00060, 2015 WL 4652717, at *5-6 (P.T.A.B. Aug. 3, 2015) (rejecting CBM status for semi-conductor devices, despite ubiquitous use in the financial system, because the “statutory language ... requires us to focus on the challenged claims rather than speculate on possible uses of products recited in the claims”); Par Pharm., Inc. v. Jazz Pharm., Inc., CBM2014-00149, -00150, -00151, -00153, 2015 WL 216987, at *5-6 (P.T.A.B. Jan. 13, 2015) (rejecting CBM status because “our focus is firmly on the claims” and petitioner had not “analyze[d] the claim language, in detail and in context, to explain how the claim language recites method steps involving the movement of money or extension of credit in exchange for a product or service”); PNC Fin. Servs. Grp., Inc. v. Intellectual Ventures I LLC, CBM2014-00032, 2014 WL 2174767, at *6 (P.T.A.B. May 22, 2014) (rejecting CBM status of computer file-security patent, despite suit against financial institutions, because “the focus is on the claims”).
The panel’s reading of the statutory language, and all of the just-cited authorities, reflect the common-sense, circumscribed scope of what Congress said it was targeting — certain “business method patents.” In contrast, the alternative resolution of the statutory ambiguity — excluding the “used in ...” qualifier from what must be “claimed” (explicitly or implicitly) — would produce a meaning not plausibly attributed to Congress.
Under that resolution of the ambiguity, the language would refer to any claim to any “method or corresponding apparatus for performing data processing or other operations,” ALA § 18(d)(1) (emphases added) — a phrase of vast scope — as long as that method or apparatus is, in fact, “used in the practice, administration, or management of a financial product or service” by someone somewhere, id., even when no claim of the patent at issue refers explicitly or implicitly to such a use. Even if we restricted our focus to the financial industry, such a “used in fact” resolution of the textual ambiguity would reach patents claiming computers, networks, phone apps, HVAC, glass (in offices and on computer screens), and far more: they are all in fact used in carrying out the transactions that characterize banking. That is an implausible understanding of what Congress meant by “business method,” especially, as the panel noted, in light of the restrictions Congress imposed on the other new programs for PTO reconsideration of issued patents, notably, the IPR program.[2]
In fact, the breadth of a “used in fact” resolution of the textual ambiguity is even greater than that. This court has read section 18(d)(l)’s “used in ...” language very broadly, to go well beyond the financial industry — seemingly to include, for example, any money-transfer activity in normal selling, no matter what product is sold, be it pharmaceuticals, medical devices, or *1002 anything else. Versata, 793 F.3d at 1325 (“[T]he definition of ‘covered business method patent’ is not limited to products and services of only the financial industry, or to patents owned by or directly affecting the activities of financial institutions such as banks and brokerage houses.”); see SightSound, 809 F.3d at 1315-16. That broad concept of “the practice, administration, or management of a financial product or service,” accepted by the panel in this case, makes the consequences of the “used in fact” resolution of the statutory ambiguity even more implausibly extreme.
In dissent, Judge Lourie has advanced a different statutory interpretation in an effort to avoid the unreasonable breadth of a “used in fact” reading of the text. That alternative focuses on aspects of the specification not even contended to limit claim scope and the list of defendants sued under the patent. In my view, there are at least two important problems with that focus.
First, the relied-on considerations do not have a sound grounding in the statutory text. Section 18(d)(1) defines a qualifying patent by what it “claims,” as determined by claim construction, not mere non-limiting embodiments in the specification and not who has been sued first. Moreover, if the “use[ ] in the practice, administration, or management of a financial product or service” need not be reflected in the “claims,” what is left, as a textual alterna-five, is only that such use in fact occur. It should not matter how that fact (which often will be indisputable, as with goods sold or computers or glass, etc.) is proved, whether through the specification’s non-limiting (merely exemplary) identification of uses or the patentee’s infringement complaints or any other evidence.
Second, the dissent’s effort to confine the scope of the CBM program to the intended “business method patents” boundary is also intrinsically indeterminate to an unacceptable degree. What record of lawsuits should count? What happens when more suits are brought? What mention of banking or other particular applications in the specification should count — short of having a claim-narrowing effect? Indeterminacy in the standard for deciding Board jurisdiction, it seems to me, should be avoided for much the same reasons as those the Supreme Court has recited in rejecting indeterminate standards for court jurisdiction. See Bolivarian Republic of Venezuela v. Helmerich & Payne Int’l Drilling Co., — U.S. —, 137 S.Ct. 1312, 1321, 197 L.Ed.2d 663 (2017) (for “a jurisdictional matter,” “clarity is particularly important”) (citing Hertz Corp. v. Friend, 559 U.S. 77, 94-95, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010)).[3]
For at least those reasons, I believe, the panel’s resolution of the statutory issue is sound, on its own terms and compared to the alternatives, and comports with all of *1003 our precedent. It also avoids the implausible-breadth and indeterminacy problems of the alternatives.[4] And this case does not present other issues about coverage of a patent by AIA § 18.[5]
If Congress chooses to consider extending or revising the CBM program, it might of course conclude that a different definition of the scope of a CBM program is preferable. It is free to do so, and to address the relevant practical, policy, and textual issues in pursuing its aims. In the meantime, investment of further judicial resources to straggle with the issues as an interpretive matter is not worthwhile for this sunsetting, comparatively little-used program.
The particular issue presented has arisen only rarely — which would not be true if Board panels had commonly been finding CBM status with no express or implicit claim reference to a “use[ ] in the practice, administration, or management of a financial product or service.” Where the issue arises in the next three years or so, the panel decision here clarifies matters. And where a patent does not qualify for CBM review, other remedies are available, including the IPR program for anticipation and obviousness challenges of the sort presented here, reexamination on similar grounds, and the traditional remedy of litigation in the district courts. As to litigation, it is worth noting that, for many patent-eligibility challenges under 35 U.S.C. § 101 of the sort often presented in CBM reviews (though not in this case), recent experience makes clear that relatively fast adjudications are now often available in court.

. The present case now involves only claim 24 of U.S. Patent No. 7,631,191, challenged on anticipation and obviousness grounds. All other claims of the patent were determined to be unpatentable in a separate IPR (requested by persons other than appellees here), and the present panel affirmed. See Secure Axcess, LLC v. EMC Corp., No. 2016-1354, 680 Fed. Appx. 947, 2017 WL 676603 (Fed. Cir. Feb. 21, 2017). Appellees may challenge remaining claim 24 in court if Secure Axcess alleges that they infringe that claim. The PTO may also further review claim 24, e.g., through an ex parte reexamination (initiated sua sponte or at someone’s request, 35 U.S.C. § 303) or through an IPR (if properly requested, see 35 U.S.C. § 315(b), (e)).

. In Cuozzo Speed Technologies, LLC v. Lee, — U.S. —, 136 S.Ct. 2131, 195 L.Ed.2d 423 (2016), the dissent cited a patent claiming "tempered glass” as an example of a plainly improper reading of the "CBM” definition. Id. at 2155 (Alito, J., dissenting).

. See Hertz, 559 U.S. at 94-95, 130 S.Ct. 1181 ("[A]dministrative simplicity is a major virtue in a jurisdictional statute. Sisson v. Ruby, 497 U.S. 358, 375, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990) (Scalia, J., concurring in judgment) (eschewing 'the sort of vague boundary that is to be avoided in the area of subject-matter jurisdiction wherever possible'). Complex jurisdictional tests complicate a case, eating up time and money as the parties litigate, not the merits of their claims, but which court is the right court to decide those claims.... Complex tests produce appeals and reversals, encourage gamesmanship, and, again, diminish the likelihood that results and settlements will reflect a claim’s legal and factual merits. Judicial resources too are at stake.... [C]ourts benefit from straightforward rules under which they can readily assure themselves of their power to hear a case.... [¶] Simple jurisdictional rules also promote greater predictability. Predictability is valuable to corporations making business and investment decisions.... Predictability also benefits plaintiffs deciding whether to file suit in a state or federal court.”).

. The CBM program, within its basic "business method" limits, is further narrowed by an exception for "technological inventions,” AIA § 18(d)(1), but that exception cannot sensibly be understood as serving the primary boundary-defining function for the program. "Technological invention” is a phrase with no established meaning; and the Director, granted regulatory authority to specify its scope, § 18(d)(2), has defined the term to call for a full anticipation and obviousness analysis. 37 C.F.R. § 42.301(b). That is not a gateway determination, let alone one that avoids problems of indeterminacy.

. Questions have been raised, in two non-precedential Board decisions Judge Lourie cites in dissenting from denial of en banc rehearing, about whether § 18 coverage that would otherwise exist is eliminated by the patent owner's disclaimer of particular claims of the patent under 35 U.S.C. § 253. We have not reviewed those decisions, and the Director has not regulated on the questions raised. Without suggesting the contours of a proper analysis, I note two points of possible relevance. First, a disclaimer of a patent claim does not require that the patent be treated, for all legal purposes, as if it never contained the claim. See Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., 853 F.3d 1370, 1382 (Fed. Cir. 2017). Second, as a general rule, a court's jurisdiction depends on the facts at the time of the complaint and is not defeated by later actions of the defendant (a disclaimer is basically a surrender of rights with prejudice). See, e.g., Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1365-66 (Fed. Cir. 2012); Ford Motor Co. v. United States, 688 F.3d 1319, 1326 (Fed. Cir. 2012).