# United States Court of Appeals for the Federal Circuit

---

**SECURE AXCESS, LLC,**
*Appellant*

v.

**PNC BANK NATIONAL ASSOCIATION, U.S. BANK NATIONAL ASSOCIATION, U.S. BANCORP, BANK OF THE WEST, SANTANDER BANK, N.A., ALLY FINANCIAL, INC., RAYMOND JAMES & ASSOCIATES, INC., TRUSTMARK NATIONAL BANK, NATIONWIDE BANK, CADENCE BANK, N.A., COMMERCE BANK,**
*Appellees*

---

2016-1353

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. CBM2014-00100.

---

**ON PETITIONS FOR REHEARING EN BANC**

---

Before PROST, *Chief Judge*, NEWMAN, PLAGER[*], LOURIE, DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, CHEN, and HUGHES, *Circuit Judges*.[**]

TARANTO, *Circuit Judge*, with whom MOORE, *Circuit Judge*, joins, concurs in the denial of rehearing en banc.

O'MALLEY, *Circuit Judge,* concurs in the denial of rehearing en banc.

REYNA, *Circuit Judge*, concurs in the denial of rehearing en banc.

LOURIE, *Circuit Judge*, with whom PROST, *Chief Judge*, DYK, WALLACH, and HUGHES, *Circuit Judges*, join, dissents from the denial of rehearing en banc.

DYK*, Circuit Judge*, with whom WALLACH and HUGHES, *Circuit Judges*, join, dissents from the denial of rehearing en banc.

PLAGER, *Circuit Judge,* concurs in the denial of panel rehearing.

PER CURIAM.

## O R D E R

Appellees U.S. Bank National Association and U.S. Bancorp and appellees PNC Bank National Association; Santander Bank, N.A.; and Nationwide Bank filed separate petitions for rehearing en banc. A response to the petitions was invited by the court and filed by the appellant Secure Axcess, LLC. Two motions for leave to file amici curiae briefs were also filed and granted by the court.

---

[*]    Circuit Judge Plager participated only in the decision on panel rehearing.

[**]    Circuit Judge Stoll did not participate.

The petitions were referred to the panel that heard the appeal, and thereafter the petitions, response, and briefs of amici curiae were referred to the circuit judges who are in regular active service. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

The petitions for panel rehearing are denied.

The petitions for rehearing en banc are denied.

The mandate of the court will be issued on June 13, 2017.


                                FOR THE COURT


 June 6, 2017                    /s/ Peter R. Marksteiner
     Date                        Peter R. Marksteiner
                                 Clerk of Court

# United States Court of Appeals
# for the Federal Circuit

———————

**SECURE AXCESS, LLC,**
*Appellant*

**v.**

**PNC BANK NATIONAL ASSOCIATION, U.S. BANK
NATIONAL ASSOCIATION, U.S. BANCORP, BANK
OF THE WEST, SANTANDER BANK, N.A., ALLY
FINANCIAL, INC., RAYMOND JAMES &
ASSOCIATES, INC., TRUSTMARK NATIONAL
BANK, NATIONWIDE BANK, CADENCE BANK,
N.A., COMMERCE BANK,**
*Appellees*

———————

2016-1353

———————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. CBM2014-00100.

———————

TARANTO, *Circuit Judge*, with whom MOORE, *Circuit Judge*, joins, concurring in the denial of rehearing en banc.

This case involves a targeted and time-limited program—"a transitional post-grant review proceeding for review of the validity of covered business method [CBM] patents." Leahy–Smith America Invents Act (AIA) § 18(a)(1), Pub. L. No. 112-29, 125 Stat. 284, 329 (2011).

The program is now more than halfway through its specified eight-year life; it is set to expire in a little over three years.  AIA § 18(a)(3).  The program has consistently been small in scale, unlike the permanent program for inter partes reviews (IPR), 35 U.S.C. §§ 311–319, and the issue presented in this case has arisen only rarely.  Although the statute grants relevant rulemaking authority to the Director of the Patent and Trademark Office (PTO), AIA § 18(a)(1), the legal issue comes to this court unaccompanied by any regulation except one that, regarding this issue, merely incorporates the statutory language.  37 C.F.R. § 42.301(a).  On the question thus presented, the panel opinion in this case adopts a resolution that soundly resolves an ambiguity in the statutory language and is consistent with every one of our precedents and with a number of Patent Trial and Appeal Board decisions dating to when the program began.  In these circumstances, further review of the CBM issue here would be a poor use of judicial resources.  Should an extension of the CBM program in some form be deemed desirable, congressional redrafting is a better process through which to address the issues raised by the statute's current language.[1]

---

[1]    The present case now involves only claim 24 of U.S. Patent No. 7,631,191, challenged on anticipation and obviousness grounds.  All other claims of the patent were determined to be unpatentable in a separate IPR (requested by persons other than appellees here), and the present panel affirmed.  *See Secure Axcess, LLC v. EMC Corp.*, No. 2016-1354, 2017 WL 676603 (Fed. Cir. Feb. 21, 2017).  Appellees may challenge remaining claim 24 in court if Secure Axcess alleges that they infringe that claim.  The PTO may also further review claim 24, *e.g.*, through an ex parte reexamination (initiated sua sponte or at someone's request, 35 U.S.C. § 303) or through an IPR (if properly requested, *see* 35 U.S.C. § 315(b), (e)).

The statutory language defines the essential gateway qualification for entry into the CBM program: a CBM patent is one "that *claims* a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service . . . ."   AIA § 18(d)(1) (emphasis added).   That language makes one thing unambiguously clear and leaves a familiar ambiguity as to a second textual issue.

The clear prescription is that what counts is what the patent *claims*—which, as the panel explained, is a matter of proper claim construction, in which the specification plays a large role (the roster of litigation defendants does not).   In this case, there is not even a contention that any claim, properly construed, incorporates any requirement based on the specification's mention of banks or any reference to "use[] in the practice, administration, or management of a financial product or service."   AIA § 18(d)(1).   It is undisputed that the claims in this case all apply to certain computer access technologies, whether or not they are used in the practice, administration, or management of a financial product or service.

The second textual issue, addressing the words that follow "claims" in section 18(d)(1), is whether the verb "claims" applies to *both* the "method or corresponding apparatus" language *and* the "used in the practice, administration, or management of a financial product or service" language or, instead, applies just to the "method or corresponding apparatus" language.   This is a common type of ambiguity where a verbal phrase precedes a predicate that expressly or implicitly has two parts.   *Cf. Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760–61, 766 (2011) (recognizing ambiguity as to whether, in the phrase "induces infringement," the implicit knowledge requirement in "induce" applies not just to the act that infringes but also to its infringing character;

resolving the ambiguity by requiring knowledge of both). The panel resolved the ambiguity by reading "claims" as reaching both parts of the predicate (much as *Global-Tech* did for its similar ambiguity): the latter portion ("used in . . .") as well as the former ("method or corresponding apparatus . . .") must be referenced among what is claimed, explicitly or implicitly, in at least one claim of the patent.

That resolution is not just a textually familiar one; it is in accord with all of our court's precedents. Even before *Unwired Planet, LLC v. Google Inc.*, 841 F.3d 995 (Fed. Cir. 2016), we read section 18(d)(1) in this way. In *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331 (Fed. Cir. 2016), we explained that "§ 18(d)(1) directs us to examine *the claims* when deciding whether a patent is a CBM patent." *Id.* at 1340. And in approving the standard applied by the Board in a number of decisions that had *rejected* CBM status, we said: "each of these cases *properly focuses on the claim language at issue* and, finding *nothing explicitly or inherently financial in the construed claim language,* declines to institute CBM review." *Id.* (emphases added). The panel opinion in the present case reflects the same interpretation.

All of our precedents also accord with this interpretation on their facts. Each of our cases finding a petition proper under the CBM program has involved a reference to a financial element (shorthand for the statutory "used in . . ." phrase) in at least one claim. In *Blue Calypso*, the language of claim 1 of the patent at issue—"subsidizing the qualified subscriber according to the chosen subsidy program," *id.* at 1339 (quoting U.S. Patent No. 7,664,516, col. 7, lines 39–40)—established that "the claims of the Blue Calypso Patents are directed to methods in which advertisers *financially* induce 'subscribers' to assist their advertising efforts," *id.* at 1340. Financial claim elements were present, too, in *SightSound Technologies, LLC v.*

*Apple Inc.*, 809 F.3d 1307, 1311, 1315–16 (Fed. Cir. 2015) (claiming methods for "selling the desired digital video or digital audio signals to [a party] for a fee through tele-communications lines"), and *Versata Development Group, Inc. v. SAP America, Inc.,* 793 F.3d 1306, 1311–13, 1327 (Fed. Cir. 2015) (claiming product grouping and pricing software).

The same is true of DataTreasury's Ballard patents, U.S. Patent Nos. 5,910,988 and 6,032,137, which helped prompt enactment of the CBM program. *See DataTreasury Corp. v. Fid. Nat'l Info. Servs., Inc.*, 669 F. App'x 572, 573 (Fed. Cir. 2016) (affirming the Board's rejection of challenged claims of the '988 and '137 patents in CBM proceedings), *cert. denied*, 137 S. Ct. 1338 (2017).  Each of the two Ballard patents contains at least one claim directed to "the practice, administration, or management of a financial product or service."  For example: In the '137 patent, every independent claim (thus every claim) contains a requirement regarding "transactions from checks." '137 patent, claims 1, 26, 42, 43.  In the '988 patent, claims 3–8, 28, 45, 50, 87, 92, 96, 101, and 113 refer to "electronic transactions from credit cards, smart cards[,] and debit cards"; claims 51, 55, 64, 70, 75–77, and 102–109 refer to credit cards, debit cards, credit-card transactions or statements, or bank statements; and more generally, every independent claim (thus every claim) contains a requirement regarding "receipts" (and some also refer to "transactions"), '988 patent, claims 1, 16, 42, 46, 84, 88, 93, 97, 102, 106, 110, 114, 118, 121.  Those patents plainly are CBM patents under the panel ruling in the present case.  Nothing similar appears, expressly or by construction, in the claims of the patent at issue here.

The panel's reading of the statute accords as well with several Board decisions, dating back to the launching of the CBM program, that rejected CBM status for similar reasons.  *See Fairchild Semiconductor Corp. v. In-Depth*

*Test LLC*, CBM2015-00060, 2015 WL 4652717, at *5–6 (P.T.A.B. Aug. 3, 2015) (rejecting CBM status for semi-conductor devices, despite ubiquitous use in the financial system, because the "statutory language . . . requires us to focus on the challenged claims rather than speculate on possible uses of products recited in the claims"); *Par Pharm., Inc. v. Jazz Pharm., Inc.*, CBM2014-00149, -00150, -00151, -00153, 2015 WL 216987, at *5–6 (P.T.A.B. Jan. 13, 2015) (rejecting CBM status because "our focus is firmly on the claims" and petitioner had not "analyze[d] the claim language, in detail and in context, to explain how the claim language recites method steps involving the movement of money or extension of credit in exchange for a product or service"); *PNC Fin. Servs. Grp., Inc. v. Intellectual Ventures I LLC*, CBM2014-00032, 2014 WL 2174767, at *6 (P.T.A.B. May 22, 2014) (rejecting CBM status of computer file-security patent, despite suit against financial institutions, because "the focus is on the claims").

The panel's reading of the statutory language, and all of the just-cited authorities, reflect the common-sense, circumscribed scope of what Congress said it was target-ing—certain "*business method* patents." In contrast, the alternative resolution of the statutory ambiguity—excluding the "used in . . ." qualifier from what must be "claimed" (explicitly or implicitly)—would produce a meaning not plausibly attributed to Congress.

Under that resolution of the ambiguity, the language would refer to any claim to any "*method* or corresponding *apparatus* for performing data processing *or other opera-tions*," AIA § 18(d)(1) (emphases added)—a phrase of vast scope—as long as that method or apparatus is, in fact, "used in the practice, administration, or management of a financial product or service" by someone somewhere, *id.*, even when no claim of the patent at issue refers explicitly or implicitly to such a use. Even if we restricted our focus

to the financial industry, such a "used in fact" resolution of the textual ambiguity would reach patents claiming computers, networks, phone apps, HVAC, glass (in offices and on computer screens), and far more: they are all in fact used in carrying out the transactions that characterize banking. That is an implausible understanding of what Congress meant by "business method," especially, as the panel noted, in light of the restrictions Congress imposed on the other new programs for PTO reconsideration of issued patents, notably, the IPR program.[2]

In fact, the breadth of a "used in fact" resolution of the textual ambiguity is even greater than that. This court has read section 18(d)(1)'s "used in . . ." language very broadly, to go well beyond the financial industry—seemingly to include, for example, any money-transfer activity in normal selling, no matter what product is sold, be it pharmaceuticals, medical devices, or anything else. *Versata*, 793 F.3d at 1325 ("[T]he definition of 'covered business method patent' is not limited to products and services of only the financial industry, or to patents owned by or directly affecting the activities of financial institutions such as banks and brokerage houses."); s*ee SightSound*, 809 F.3d at 1315–16. That broad concept of "the practice, administration, or management of a financial product or service," accepted by the panel in this case, makes the consequences of the "used in fact" resolution of the statutory ambiguity even more implausibly extreme.

In dissent, Judge Lourie has advanced a different statutory interpretation in an effort to avoid the unreasonable breadth of a "used in fact" reading of the text.

---

[2] In *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016), the dissent cited a patent claiming "tempered glass" as an example of a plainly improper reading of the "CBM" definition. *Id.* at 2155 (Alito, J., dissenting).

That alternative focuses on aspects of the specification not even contended to limit claim scope and the list of defendants sued under the patent. In my view, there are at least two important problems with that focus.

First, the relied-on considerations do not have a sound grounding in the statutory text. Section 18(d)(1) defines a qualifying patent by what it "claims," as determined by claim construction, not mere non-limiting embodiments in the specification and not who has been sued first. Moreover, if the "use[] in the practice, administration, or management of a financial product or service" need not be reflected in the "claims," what is left, as a textual alternative, is only that such use in fact occur. It should not matter how that fact (which often will be indisputable, as with goods sold or computers or glass, etc.) is proved, whether through the specification's non-limiting (merely exemplary) identification of uses or the patentee's infringement complaints or any other evidence.

Second, the dissent's effort to confine the scope of the CBM program to the intended "business method patents" boundary is also intrinsically indeterminate to an unacceptable degree. What record of lawsuits should count? What happens when more suits are brought? What mention of banking or other particular applications in the specification should count—short of having a claim-narrowing effect? Indeterminacy in the standard for deciding Board jurisdiction, it seems to me, should be avoided for much the same reasons as those the Supreme Court has recited in rejecting indeterminate standards for *court jurisdiction*. *See Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1321 (2017) (for "a jurisdictional matter," "clarity is

particularly important") (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 94–95 (2010)).[3]

For at least those reasons, I believe, the panel's resolution of the statutory issue is sound, on its own terms and compared to the alternatives, and comports with all of our precedent. It also avoids the implausible-breadth and indeterminacy problems of the alternatives.[4]   And

---

[3]     *See Hertz*, 559 U.S. at 94–95 ("[A]dministrative simplicity is a major virtue in a jurisdictional statute. *Sisson v. Ruby,* 497 U.S. 358, 375 (1990) (Scalia, J., concurring in judgment) (eschewing 'the sort of vague boundary that is to be avoided in the area of subject-matter jurisdiction wherever possible'). Complex jurisdictional tests complicate a case, eating up time and money as the parties litigate, not the merits of their claims, but which court is the right court to decide those claims. . . . Complex tests produce appeals and reversals, encourage gamesmanship, and, again, diminish the likelihood that results and settlements will reflect a claim's legal and factual merits. Judicial resources too are at stake. . . . [C]ourts benefit from straightforward rules under which they can readily assure themselves of their power to hear a case. . . . [¶] Simple jurisdictional rules also promote greater predictability. Predictability is valuable to corporations making business and investment decisions. . . . Predictability also benefits plaintiffs deciding whether to file suit in a state or federal court.").

[4]     The CBM program, within its basic "business method" limits, is further narrowed by an exception for "technological inventions," AIA § 18(d)(1), but that exception cannot sensibly be understood as serving the primary boundary-defining function for the program. "Technological invention" is a phrase with no established meaning; and the Director, granted regulatory authority to specify its scope, § 18(d)(2), has defined the term to call for a full

this case does not present other issues about coverage of a patent by AIA § 18.[5]

If Congress chooses to consider extending or revising the CBM program, it might of course conclude that a different definition of the scope of a CBM program is preferable. It is free to do so, and to address the relevant practical, policy, and textual issues in pursuing its aims. In the meantime, investment of further judicial resources to struggle with the issues as an interpretive matter is not worthwhile for this sunsetting, comparatively little-used program.

---

anticipation and obviousness analysis. 37 C.F.R. § 42.301(b). That is not a gateway determination, let alone one that avoids problems of indeterminacy.

[5] Questions have been raised, in two non-precedential Board decisions Judge Lourie cites in dissenting from denial of en banc rehearing, about whether § 18 coverage that would otherwise exist is eliminated by the patent owner's disclaimer of particular claims of the patent under 35 U.S.C. § 253. We have not reviewed those decisions, and the Director has not regulated on the questions raised. Without suggesting the contours of a proper analysis, I note two points of possible relevance. First, a disclaimer of a patent claim does not require that the patent be treated, for *all* legal purposes, as if it never contained the claim. *See Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1382 (Fed. Cir. 2017). Second, as a general rule, a *court*'s jurisdiction depends on the facts at the time of the complaint and is not defeated by later actions of the defendant (a disclaimer is basically a surrender of rights with prejudice). *See, e.g., Cent. Pines Land Co., L.L.C. v. United States*, 697 F.3d 1360, 1365–66 (Fed. Cir. 2012); *Ford Motor Co. v. United States*, 688 F.3d 1319, 1326 (Fed. Cir. 2012).

The particular issue presented has arisen only rarely—which would not be true if Board panels had commonly been finding CBM status with no express or implicit claim reference to a "use[] in the practice, administration, or management of a financial product or service." Where the issue arises in the next three years or so, the panel decision here clarifies matters. And where a patent does not qualify for CBM review, other remedies are available, including the IPR program for anticipation and obviousness challenges of the sort presented here, reexamination on similar grounds, and the traditional remedy of litigation in the district courts. As to litigation, it is worth noting that, for many patent-eligibility challenges under 35 U.S.C. § 101 of the sort often presented in CBM reviews (though not in this case), recent experience makes clear that relatively fast adjudications are now often available in court.

# United States Court of Appeals
# for the Federal Circuit

---

**SECURE AXCESS, LLC,**
*Appellant*

**v**

**PNC BANK NATIONAL ASSOCIATION, U.S. BANK NATIONAL ASSOCIATION, U.S. BANCORP, BANK OF THE WEST, SANTANDER BANK, N.A., ALLY FINANCIAL, INC., RAYMOND JAMES & ASSOCIATES, INC., TRUSTMARK NATIONAL BANK, NATIONWIDE BANK, CADENCE BANK, N.A., COMMERCE BANK,**
*Appellees*

---

2016-1353

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. CBM2014-00100.

---

O'MALLEY, *Circuit Judge*, concurring in the denial of rehearing en banc.

I concur in the court's order denying rehearing en banc in this matter. I do so for the reasons articulated by Judge Plager in his opinion concurring in the denial of panel rehearing.

# United States Court of Appeals
# for the Federal Circuit

---

**SECURE AXCESS, LLC,**
*Appellant*

v

**PNC BANK NATIONAL ASSOCIATION, U.S. BANK NATIONAL ASSOCIATION, U.S. BANCORP, BANK OF THE WEST, SANTANDER BANK, N.A., ALLY FINANCIAL, INC., RAYMOND JAMES & ASSOCIATES, INC., TRUSTMARK NATIONAL BANK, NATIONWIDE BANK, CADENCE BANK, N.A., COMMERCE BANK,**
*Appellees*

---

2016-1353

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. CBM2014-00100.

---

REYNA, *Circuit Judge*, concurring in the denial of rehearing en banc.

I agree with the analysis expressed in Judge Plager's opinion concurring in the denial of panel rehearing. For the reasons stated in Judge Plager's opinion, I concur in the court's order denying rehearing en banc.

# United States Court of Appeals
# for the Federal Circuit

---

**SECURE AXCESS, LLC,**
*Appellant*

v.

**PNC BANK NATIONAL ASSOCIATION, U.S. BANK NATIONAL ASSOCIATION, U.S. BANCORP, BANK OF THE WEST, SANTANDER BANK, N.A., ALLY FINANCIAL, INC., RAYMOND JAMES & ASSOCIATES, INC., TRUSTMARK NATIONAL BANK, NATIONWIDE BANK, CADENCE BANK, N.A., COMMERCE BANK,**
*Appellees*

---

2016-1353

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. CBM2014-00100.

---

LOURIE, *Circuit Judge*, with whom PROST, *Chief Judge*, DYK, WALLACH, and HUGHES, *Circuit Judges*, join dissenting from the denial of rehearing en banc.

For reasons stated in my dissent from the panel's decision and those that follow, I respectfully dissent from the court's decision not to rehear this case en banc. The panel held that "the statutory definition of a [covered business method ("CBM")] patent requires that the patent

have a claim that contains, however phrased, *a financial activity element.*"  *Secure Axcess, LLC v. PNC Bank Nat'l Ass'n*, 848 F.3d 1370, 1381 (Fed. Cir. 2017) (emphasis added).  However, I believe that conclusion is contrary to the statutory language, congressional intent, and our case law.

Although not every error by a panel is enbancable, the statutory interpretation question presented here certainly satisfies the requirements for en banc review, *see, e.g.*, *Suprema, Inc. v. Int'l Trade Comm'n*, 796 F.3d 1338, 1344–45 (Fed. Cir. 2015) (en banc) (petition for en banc rehearing granted to consider whether certain acts were covered by 19 U.S.C. § 1337).  In particular, both the Federal Rules of Appellate Procedure and our Internal Operating Procedures ("IOPs") provide that en banc review is available for cases that involve "a question of exceptional importance."  FED. R. APP. P. 35(a)(2); IOP 13(2)(b).  Additionally, our IOPs provide that "maintaining uniformity of decisions" is an appropriate basis to grant rehearing en banc.  IOP 13(2)(a).

The interpretation of the statutory language "a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service," Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112–29, § 18(d)(1), 125 Stat. 284, 329–31 (2011),[1] presents an enbancable issue.  There may be many patents whose identity as a CBM patent either will be at issue during the life of this statutory provision in proceedings before the Board, or would have been at issue under the correct statutory interpretation.  A subsidiary issue is whether "a financial activity element"

---

[1]    Section 18 of the AIA, pertaining to CBM review, is not codified. References to AIA §§ 3, 6, and 18 herein are to the statutes at large.

must appear in a claim of the patent in order for a claimed process to qualify as a CBM patent. If it must, then this case illustrates how the intent of Congress to provide for special examination of CBM patents can be subverted by an unduly limited interpretation of the statute.

As we have recognized, concerns "regarding litigation abuse over business method patents . . . caused Congress to create a special program for these patents in the first place." *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1325 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 2510 (2016). To avoid "expensive litigation" over invalid patents, Congress created CBM review to be an "inexpensive and speedy alternative to litigation—allowing parties to resolve these disputes more efficiently rather than spending millions of dollars in litigation costs." Ltr. From Rep. Smith, Chairman of the House Judiciary Comm., to Sens. Kyl, Schumer, Leahy, and Grassley, dated Sept. 8, 2011, *reprinted in* 157 Cong. Rec. S7413-02 (daily ed. Nov. 14, 2011) [hereinafter Rep. Smith Ltr.]; *see also* 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer) ("The [CBM program] is designed to provide a cheaper, faster alternative to district court litigation over the validity of business-method patents. This program should be used instead of, rather than in addition to, civil litigation."). Congress intended for the CBM program "to be construed as broadly as possible" to allow the PTO "to correct egregious errors that were made in the granting of a wide range of business method patents." Rep. Smith Ltr.; *see also* 157 Cong. Rec. S1364–65 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer).

The panel majority's interpretation severely limiting what constitutes a CBM patent under AIA § 18 and what may be considered in making that determination clearly frustrates Congress's intent in establishing CBM review. The Patent Trial and Appeal Board ("the Board") has had to apply the panel majority's incorrect statutory interpre-

tation in denying institution of CBM reviews.  *See, e.g.,* *Ford Motor Co. v. Versata Dev. Grp., Inc.*, CBM2016-00100, slip op. at 2 (P.T.A.B. Mar. 20, 2017) (Turner, APJ., concurring) ("Because of *Secure Axcess* . . . we cannot interpret what may be explicitly absent from independent claims by looking to the written description. Thus, even though independent claims . . . are sufficiently broad to cover their use with financial products, and the clear intent was for them to be applied to financial products, they cannot render the '825 patent to be subject to a covered business method patent review."); *Twilio Inc. v. Telesign Corp.*, CBM2016-00099, slip op. at 13 (P.T.A.B. Feb. 27, 2017) (explaining "our focus is on what the '792 patent claims, not solely the exemplary embodiments described in the Specification, some of which are related to finance and some of which are not" (citing *Secure Axcess*, 848 F.3d at 1379–80)); *see also* Br. of the Clearing House Payments Co., L.L.C. & Fin. Servs. Roundtable at 4–6, *Secure Axcess, LLC v. PNC Bank Nat'l Ass'n*, No. 16-1353 (Fed. Cir. Apr. 20, 2017), ECF No. 150 [hereinafter Clearing House Amicus Br.].

Additionally, patent owners have selectively disclaimed dependent claims that on their face seem to include "a financial activity element" to avoid CBM institution.  *See, e.g., Ford*, slip op. at 2 (Turner, APJ., concurring) ("Had [dependent] claim 5 not been disclaimed, it is readily apparent that claim 5 would have been found to be a [CBM]."); *Twilio*, slip op. at 2, 9; Clearing House Amicus Br. at 6–8.  As an amicus points out, "[a]lthough a broader independent claim and its narrower dependent claims both *necessarily* cover the financial product or service [covered by the dependent claims], now an artful drafter may eliminate the narrower claims (or the 'financial activity element[s]' that they recite) to dodge CBM review."  Clearing House Amicus Br. at 7 (third alternation in original).  Thus, despite the panel majority's assurance that "the phrasing of a qualifying claim does not require

particular talismanic words," *Secure Axcess*, 848 F.3d at 1381, the practical effect of its holding promotes that result. Such a result "elevate[s] form over substance" and allows "[c]lever drafting" to "avoid PTO review under [the CBM provisions]" in contravention of congressional intent. 157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer).

For at least these reasons, the fact that CBM review is currently set to sunset on September 16, 2020, AIA § 18(a)(3), does not diminish the current importance of this issue. Congress may "extend[] or mak[e] permanent [the CBM] program in the future." *See* Rep. Smith Ltr. Because we generally do not have authority to review Board decisions denying institution of CBM review, *see Versata*, 793 F.3d at 1315 (explaining "we are not here called upon to review the determination by the PTAB whether to institute a CBM review, and indeed the statute expressly instructs that we may not" (citing 35 U.S.C. § 324(e)), it was especially important that we correct this erroneous statutory interpretation now.

Moreover, the availability of *inter partes* review ("IPR") and post grant review ("PGR") does not support denying en banc rehearing in this case. CBM review permits validity challenges to issued patents that are not available in an IPR, *e.g.*, pursuant to §§ 101, 112. *Compare* AIA § 18(a)(1), *with* 35 U.S.C. § 311(b). Although CBM review and PGR permit the same types of validity challenges, AIA § 18(a)(1), only patents that have a claim with a priority date on or after March 16, 2013 are subject to PGR, *id.* §§ 3(n)(1), 6(f)(2)(A). Additionally, a petition for PGR must be filed within nine months of the patent's grant or reissuance. 35 U.S.C. § 321(c). Thus, PGR is not available for the majority of patents about which Congress expressed specific concern in creating CBM review, *i.e.*, "poor business-method patents" that issued "during the late 1990's through the early 2000's." H.R. REP. 112-98, at 54 (2011), *reprinted in* 2011 U.S.C.C.A.N. 67, 84;

*see also* 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statements of Sens. Pryor, Leahy, and Schumer).

Regarding the specifics of this case, the panel determined that the patent at issue was not a CBM patent and that the Board therefore erroneously reviewed its validity under the CBM provisions of the AIA. I submit this was incorrect, and the result of that decision frustrates the clear intent of Congress in enacting the CBM portion of the AIA.

The statute defines a CBM patent as "a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions." AIA § 18(d)(1). The claims of the '191 patent are surely claims to "a method or corresponding apparatus for performing data processing or other operations *used in* the practice, administration, or management of a financial product or service."    *Id.* (emphasis added).

Claim 1 recites "[a] method comprising: transforming . . . received data . . . to create formatted data . . . ." '191 patent col. 12 ll. 9–18. Claim 17 recites "[a]n authentication system comprising: an authentication processor configured to insert an authenticity key into formatted data to enable authentication of the authenticity key to verify a source of the formatted data . . . ." *Id.* col. 12 ll. 62–67. There can be little doubt that such claims meet the "method or corresponding apparatus for performing data processing" limitation of the statute.

They also satisfy the "used in the practice, administration, or management of a financial product or service" language of the statute. Examination of the '191 patent makes clear that the invention is to be used in the management of a financial service. The exemplary embodiment is described, *inter alia*, as follows:

> The customer and merchant may represent individual people, entities, or business.  The bank may represent other types of card issuing institutions, such as credit card companies, card sponsoring companies, or third party issuers under contract with financial institutions. . . . The bank has a computing center shown as a main frame computer.  However, the bank computing center may be implemented in other forms, such as a mini-computer, a PC server, a network set of computers, and the like. . . .  Any merchant computer and bank computer are interconnected via a second network, referred to as a payment network.  The payment network represents existing proprietary networks that presently accommodate transactions for credit cards, debit cards, and other types of financial/banking cards.  The payment network is a closed network that is assumed to be secure from eavesdroppers.  Examples of the payment network include the American Express®, VisaNet® and the Veriphone® network.  In an exemplary embodiment, the electronic commerce system is implemented at the customer and issuing bank.  In an exemplary implementation, the electronic commerce system is implemented as computer software modules loaded onto the customer computer and the banking computing center.  The merchant computer does not require any additional software to participate in the online commerce transactions supported by the online commerce system.

*Id.* col. 11 ll. 22–67.  Similarly, the '191 patent uses "bigbank.com" as the only exemplary URL.  *Id.* col. 1 ll. 29–33, col. 8 ll. 21–23.  *No other applications of the invention are described in the patent*.

If there were any doubt of the use of the invention in financial management, the identity of the companies the

patent owner has sued for infringement of the '191 patent should settle the matter. *See, e.g.*, 157 Cong. Rec S1365 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer) ("[I]f a patent holder alleges that a financial product or service infringes its patent, that patent shall be deemed to cover a 'financial product or service' for purposes of this amendment regardless of whether the asserted claims specifically reference the type of product [or] service accused of infringing."). Their litigation pattern speaks volumes about what they believe their invention is "used" for. Secure Axcess filed complaints alleging that numerous companies infringe the '191 patent by "using" the invention.

Moreover, at oral argument before the panel, Secure Axcess's counsel, in response to a question, stated that no companies have been sued other than financial institutions. Oral Argument at 7:15–7:30, *Secure Axcess, LLC v. PNC Bank N.A.*, No. 16-1353 (Fed. Cir. Nov. 2, 2016), available at http://www.cafc.uscourts.gov/oral-argument-recordings?title=&field_case_number_value=20161353&-field_date_value2%5Bvalue%5D%5Bdate%5D=&=Search.

Additionally, indicating the importance of this issue, we have received amicus briefs, including from organizations that represent the interests of financial entities, urging us to rehear the panel's decision en banc. These financial entities obviously know that this patent is a CBM patent. No amicus briefs were received arguing against rehearing.

The patent at issue here clearly is a patent claiming methods and apparatuses used in the practice of a financial product or service. The written description of the '191 patent, in accordance with the requirements of the statute, *see* 35 U.S.C. § 112, tells us that the invention is to be used for financial management. *See* '191 patent col. 11 ll. 22–67; *see also id.* col. 1 ll. 29–33, col. 8 ll. 21–23. The inventors, complying with the statute, 35 U.S.C. § 112,

thus told us what the invention is to be used for. The claims recite an invention *used in the practice* of a financial product, and the uses are described in the written description of the patent. The panel majority's interpretation of the statute, which a majority of the court has determined not to review en banc, flies in the face of that plain fact.

The fact that a "financial activity element" does not appear in the claim does not mean that the patent is not used in the practice of a financial service. CBM patents are not even limited to financial services products and services. *See Versata*, 793 F.3d at 1325 (holding that "the definition of 'covered business method patent' is not limited to products and services of only the financial industry, or to patents owned by or directly affecting the activities of financial institutions"); *see also Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1338 (Fed. Cir. 2016) (affirming the Board's decision "declin[ing] to limit application of CBM review to patent claims tied to the financial sector"); *id.* at 1339 n.2 (explaining the Board correctly concluded that claims referring to "an incentive program" were eligible for CBM review where the patent "repeatedly, and almost exclusively discloses 'incentive' and 'incentive program' in a financial context") (internal citation omitted); *SightSound Techs., LLC v. Apple Inc.*, 809 F.3d 1307, 1315 (Fed. Cir. 2015) (explaining *Versata* "foreclosed" limiting the CBM patent definition to patents "directed to the management of money, banking, or investment or credit").

Although the statute states "a patent that claims," this does not suggest that the reference to the financial product or service has to be in the claim language itself, rather than in the specification. Requiring financial language to be in the claims is inconsistent with the legislative background of this provision. "This section grew out of concerns originally raised . . . about financial institutions' inability to . . . clear checks electronically . . .

without infringing the so-called Ballard patents, patents number 5,910,988 and 6,032,137." 157 Cong. Rec. S1379 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl). The majority opinion would hold that the independent claims of one of these Ballard patents, U.S. Patent No. 5,910,988, do not fall under CBM review because they make no reference to financial products or services.[2] *See also* 157 Cong. Rec. S5432 (daily ed. Sept. 8, 2011) (statement of Sen. Schumer: "Even the notorious 'Ballard patents' do not refer specifically to banks or even to financial transactions.").

Finally, as a matter of patent law, claims do not necessarily need to recite uses of products. Certainly, claims to products or apparatus do not, and AIA § 18(d)(1) refers to a "method or corresponding apparatus." If a method claim otherwise satisfies the requirements of 35 U.S.C. § 112, it need not recite an ultimate use.

In my view, the Board correctly concluded that the "method and apparatus claimed by the '191 patent perform operations used in the practice, administration, or management of a financial product or service," in accordance with the CBM patent statutory definition. *PNC Bank, N.A. v. Secure Axcess, LLC*, CBM2014-00100, 2015 WL 5316490, at *5 (P.T.A.B. Sept. 8, 2015). It is true that the Board also used overly broad language in stating in the alternative that the "method and apparatus claimed by the '191 patent . . . *are incidental to a financial activity*," i*d.* (emphasis added), and that "the '191 patent claims

---

[2]    To be sure, four dependent claims (out of the fifty total claims) refer to "credit cards" in U.S. Patent No. 5,910,988. The PTO guidelines now indicate that a patent is CBM-eligible as long as one of its claims is CBM-eligible. *See* 77 Fed. Reg. 48736. However, there is no suggestion that this type of subtlety was the basis for which the notorious Ballard patents were CBM-eligible.

a method or apparatus that at least is incidental to a financial activity, even if other types of companies also practice the claimed invention." *Id.* at *6. However, overstatement does not change the basic fact that, as the written description of the patent itself indicates, the invention is directed to a method and apparatus used in financial management, as referred to in the statute. *See, e.g.*, *Blue Calypso*, 815 F.3d at 1339 n.2.

The panel majority disparaged the clear use of this invention in the practice of a financial product or service by worrying that the CBM program would have "virtually unconstrained reach" and that "a patent would qualify [for CBM review] if it claimed a method or corresponding apparatus for performing *any* operations that happen to be used in 'the practice, administration, or management of a financial product or service.'" *Secure Axcess*, 848 F.3d at 1379 (emphasis in original). The answer to such concerns is that we need not probe the limits of the statutory language by reciting all sorts of non-financial products to show that a sensible interpretation of this statute must include what Secure Axcess itself considers to be a financial product. Common sense is not precluded from use in interpreting statutes and claims. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 (1989) ("We need not leave our common sense at the doorstep when we interpret a statute."). I agree that the subject matter of the claim must have a particular relation to a financial product or service, and not merely be an incidentally-used invention like a lightbulb or ditch-digging. *Cf. Unwired Planet, LLC v. Google, Inc.*, 841 F.3d 1376, 1382 (Fed. Cir. 2016).

Moreover, the statutory language itself places limits on the definition of a CBM patent that the panel majority largely ignores. The definition expressly excludes "patents for technological inventions," AIA § 18(d)(1), although this issue was not decided by the panel in this case.

Additionally, the definition may be further limited by the sensible application of statutory canons of construction. For example, the panel majority's concern regarding the potential breadth of "other operations" in the statute may be alleviated by application of canons of statutory construction such as *noscitur a sociis* and *ejusdem generis*. *See e.g.*, *Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2003) ("[U]nder the established interpretative canons of *noscitur a sociis* and *ejusdem generis*, '[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.'" (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001) (second alteration in original)); *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961) ("The maxim *noscitur a sociis*, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress."). The statute here specifies "*data processing* or other operations used in . . . a financial product or service," AIA § 18(d)(1) (emphasis added), so that inventions that are widely different from these are not likely to be improperly caught by this language.

I therefore respectfully dissent from the court's denial to rehear this case en banc. I would hold that applying the correct statutory interpretation, the '191 patent is a CBM patent because it claims methods and systems used in the practice of a financial product, as indicated by the written description, notwithstanding that a "financial activity element" does not appear in the claims.

# United States Court of Appeals
# for the Federal Circuit

---

**SECURE AXCESS, LLC,**
*Appellant*

**v**

**PNC BANK NATIONAL ASSOCIATION, U.S. BANK NATIONAL ASSOCIATION, U.S. BANCORP, BANK OF THE WEST, SANTANDER BANK, N.A., ALLY FINANCIAL, INC., RAYMOND JAMES & ASSOCIATES, INC., TRUSTMARK NATIONAL BANK, NATIONWIDE BANK, CADENCE BANK, N.A., COMMERCE BANK,**
*Appellees*

---

2016-1353

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. CBM2014-00100.

---

DYK, *Circuit Judge*, with whom WALLACH and HUGHES, *Circuit Judges*, join, dissenting from the denial of rehearing en banc.

I join Judge Lourie's dissent. I write separately to point out that this case also presents a predicate question of whether the "financial product or service" issue is appealable under the AIA. In *Versata Development*

*Group, Inc. v. SAP America, Inc.*, 793 F.3d 1306, 1323 (Fed. Cir. 2015), a panel of this court held that the issue was appealable.  Subsequent panels, bound by *Versata*, have reached the same result.[1]  In my view, *Versata* wrongly held that the appeal bar does not apply to the question of whether the Board correctly determined that a patent is CBM-eligible because it involves a "financial product or service."  Such reviews are inconsistent with the statute as interpreted in *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016), which held that the appeal bar in Section 314(d), identical to the appeal bar here, precludes review.[2]

I

AIA § 18(a)(1) provides that CBM proceedings "shall be regarded as, and shall employ the standards and procedures of, a post-grant review."  The post-grant review ("PGR") provisions, in turn, provide that "[t]he determination by the Director whether to institute a post-grant review under this section shall be final and nonappealable."  35 U.S.C. § 324(e).  Section 18(a)(1) thus bars review of the decision to institute review of a CBM patent.  That decision to institute includes the issue of whether

---

[1]  *Unwired Planet, LLC v. Google Inc.*, 841 F.3d 1376, 1379 (Fed. Cir. 2016); *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1338 (Fed. Cir. 2016); *SightSound Techs., LLC v. Apple Inc.*, 809 F.3d 1307, 1314 (Fed. Cir. 2015).

[2]  I note that our court is currently considering the scope of *Cuozzo* as presented in *Wi-Fi One, LLC v. Broadcom Corp.*, No. 2015-1944 (en banc), which relates to whether *Achates Reference Publishing, Inc. v. Apple Inc.*, 803 F.3d 652 (Fed. Cir. 2015), should be overruled.  *Achates* held that the one-year time bar of § 315(b) is subject to the § 314(d) appeal bar.  803 F.3d at 658.

the patent is a covered business method patent. The statute provides that "[t]he Director may *institute* a [CBM] proceeding only for a patent that is a covered business method patent." AIA § 18(a)(1)(E) (emphasis added). A patent is a covered business method patent if it "claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions." AIA § 18(d)(1).

Based on the plain language of 35 U.S.C. § 324(e) and AIA § 18(a)(1)(E), it is my view that the appeal bar precludes review of the institution decision, including whether the financial product or service requirement is satisfied. Whether a patent qualifies as a CBM is necessarily part of the *institution* decision that is non-appealable.

## II

This court addressed the § 324(e) appeal bar in *Versata* before the Supreme Court's decision in *Cuozzo*. The panel held that § 324(e) does not bar our review of the Board's determination that a patent is CBM-eligible, because the court is reviewing "the ultimate authority of the PTAB to invalidate a patent . . . [and] the restriction of [this authority in] § 18 to CBM patents." *Versata,* 793 F.3d at 1319. *Versata* concludes that even where CBM-eligibility is determined exclusively at the institution stage, this somehow permeates into the final written decision and, in turn, implicates PTAB authority, so that § 324(e) does not bar review.[3] It seems to me that *Versa-*

---

[3] Specifically, the *Versata* panel found that "[i]nstitution and invalidation are two distinct actions," and that these distinct stages of a post-grant review "do not become the same just because the agency decides

*ta*'s reasoning is inconsistent with *Cuozzo*, which interpreted the same language in § 314(d).

First, *Cuozzo* specifically holds that the appeal bar is not limited to interlocutory appeals, and that we are thus not "free to review the initial decision to institute review [even] in the context of the agency's final decision." 136 S. Ct. at 2140.

Second, *Cuozzo* directly holds that the appeal bar encompasses questions of statutory authority. Cuozzo's challenge, which the Supreme Court deemed barred, presented the question of whether the Board exceeded its statutory authority by instituting IPR in violation of § 312(a)(3) because there was no valid IPR petition. The statutory authority questions that are barred are thus "closely tied" to the decision to institute. *Cuozzo* teaches that the appeal bar

> applies where the grounds for attacking the decision to institute . . . consist of questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate review. This means that we need not, and do not, decide the precise effect of [the appeal bar] on appeals that implicate constitutional questions, that depend on other less closely related statutes, or that present other questions of interpretation that reach, in terms of scope and impact, well beyond "this section."

---

certain issues at both stages of the process. Nor do they become the same just because the agency chooses . . . to *decide an issue determining final-action authority at the initiation stage and then does not revisit the issue later*." *Versata*, 793 F.3d at 1319 (emphasis added).

136 S. Ct. at 2141 (citation omitted). Because the "Director may *institute* a [CBM] proceeding only for a patent that is a covered business method patent," AIA § 18(a)(1)(E) (emphasis added), determining what is a CBM is not only "closely tied" to the institution decision, but is expressly part of the institution decision itself. Indeed, it would be difficult to see how the CBM review program, as a five-part statute—where the requirement for institution is discussed in Section (a) and the definition for what is a CBM is discussed in Section (d)—can be read as separating the institution decision from the definition of what is a covered business method patent. The two are not just "closely tied," but are inextricably intertwined.

Third, as here, an institution decision that determines whether a patent involves a financial product or service is well within the appeal bar. It does not constitute the "shenanigans" that *Cuozzo* held could be appealed, where

> the agency . . . act[s] outside its statutory limits by, for example, canceling a patent claim for indefiniteness under § 112 in inter partes review. Such shenanigans may be properly reviewable . . . [and the] reviewing courts [can] set aside agency action that is . . . in excess of statutory jurisdiction.

136 S. Ct. at 2141–42 (quotation marks and citations omitted). This passage cannot mean that every statutory authority issue is reviewable, since the Court specifically held that the statutory limit of § 312(a)(3) is not appealable. Rather, the Supreme Court appears to deem reviewable "shenanigans" to concern, for example, agency reliance on grounds for invalidation other than those permitted by the statute, since those grounds necessarily carry forward to the final written decision.

In light of *Cuozzo*, my view is that *Versata* is wrong in holding that the § 324(e) appeal bar does not preclude our

review of the Board's determination of what is a CBM patent, and that, therefore, the issue here was non-appealable.

# United States Court of Appeals
# for the Federal Circuit

---

**SECURE AXCESS, LLC,**
*Appellant*

v

**PNC BANK NATIONAL ASSOCIATION, U.S. BANK NATIONAL ASSOCIATION, U.S. BANCORP, BANK OF THE WEST, SANTANDER BANK, N.A., ALLY FINANCIAL, INC., RAYMOND JAMES & ASSOCIATES, INC., TRUSTMARK NATIONAL BANK, NATIONWIDE BANK, CADENCE BANK, N.A., COMMERCE BANK,**
*Appellees*

---

2016-1353

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. CBM2014-00100.

---

PLAGER, *Circuit Judge,* concurring in the denial of panel rehearing.

The view that this court's panel opinion in *Secure Axcess*[1] was designed to accomplish, or inadvertently resulted in, a significant narrowing of the Director's

---

[1] *Secure Axcess, LLC v. PNC Bank Nat'l Ass'n*, 848 F.3d 1370 (Fed. Cir. 2017).

ability to institute covered business method ("CBM") reviews is mistaken, and often overstated. See the several amicus briefs in this case. Such overstatements may cause some Patent Trial and Appeal Board ("Board") judges to shy away from using the CBM process in cases in which CBM review otherwise would be proper, but if so it is the misunderstanding that is the cause, not the opinion in *Secure Axcess*. The court properly rejected requests to undertake a do-over.

The discussion in the court's issued opinion in *Secure Axcess* consists of two substantive sections: 1) on the statute at issue, America Invents Act ("AIA") § 18(d)(1)[2], and the Board's interpretation and application of the statute in this case; and 2) on the scope of this court's authority in fashioning the proper remedy for the appeal before us.

With regard to the statute, the court's opinion, as it must, follows the court's governing precedents—most directly the express holding in our recent case of *Unwired Planet*, to the effect that it is error for the Board to add to the statute phrases like "incidental to a financial activity."[3] See Judge Taranto's opinion concurring in the denial of rehearing en banc, at 4–6, for a detailed review of the cases and Board opinions; I concur fully in Judge Taranto's views regarding this case, expressed in his opinion.

The *Secure Axcess* opinion explains why the statute read as a whole results in a focus on the claims of the patent, and on the necessity for at least one claim to show how the patent claims a method or apparatus for performing operations used in the practice of a financial product or service, as the statute requires. It is not

---

[2]    Pub. L. No. 112-29, 125 Stat. 284, 331 (2011).

[3]    *Unwired Planet, LLC v. Google Inc.*, 841 F.3d 1376, 1379–82 (Fed. Cir. 2016).

enough for the claim simply to be "incidental to a financial activity." (Judge Lourie, in his dissent to the denial of en banc, seems to agree: "the subject matter of the claim must have a particular relation to a financial product or service, and not merely be an incidentally-used invention like a light-bulb or ditch-digging." Op. at 11.)

To meet the statutory test, *Secure Axcess* does not require that the claim specifically use the term "financial," nor even specifically mention the financial product or service to which the invention is addressed: "a qualifying claim does not require particular talismanic words." 841 F.3d at 1381. Nor is consideration limited to only the words in the claim as written: "A claim in a patent does not live in isolation from the rest of the patent . . . claims must be properly construed—that is, understood in light of the patent's written description . . . ." *Id.* at 1378.

In this case, the claims in *Secure Axcess* were construed by the Board in light of the written description, and on appeal we found those claim constructions consistent with the Board's approved standard for claim construction. *Id.* at 1382. But the claim constructions related only to certain design characteristics of the technology, a technology designed generally to authenticate a webpage; they were not aimed at the issue here, that is, the question how, if at all, was this invention particularly to be used in the performance of a financial product or service.

Judge Lourie in his opinion suggests that the court on appeal could make an apparently common sense connection between the claims and the rest of the patent. Presumably, we could do this by interpreting the claims in light of the written description as meeting the statutory standard. Certainly the patent's written description in places has language that might support such a conclusion. The thought is a perfectly sensible one,

but the answer lies in the difference between an appeal from a district court and an appeal from an administrative agency.

When an appeal is from the judgment of a district court, it is the judgment, not the trial court's opinion, that is on appeal; the appellate court can affirm on any ground the record supports. By contrast, when the appeal is from an administrative agency—and the Board is such an agency—the appellate court can only review the record on appeal and the decision of the agency in light of that record. The appellate court cannot stray afield to determine how the matter at issue could have been resolved had the agency explained its decision differently, perhaps under a different theory. It is what the agency said it decided that is the subject of the appeal.

As the Supreme Court made clear in *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947):

> [A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

To be clear—at issue is not whether we can correct a claim construction made by the Board in the course of its determination regarding the validity *vel non* of a patent properly before it. As an appellate court, of course we can. The issue rather is whether, in the absence of some basis in law supporting the Board's undertaking review of a patent pursuant to a governing statute, may we

reinterpret the Board's decision, and the record underlying that decision, in order to correct somehow for the absence of compliance with that statutory authority—*Chenery* tells us we cannot.

That leads naturally to the second issue dealt with in *Secure Axcess*—the proper remedy to correct the Board's error in its interpretation and application of the statutory standard. Absent anything in the Board decision that supports a conclusion that one or more of the claims at issue in *Secure Axcess* meets the statutory standard—and in the panel majority's view there was not a single claim at issue that could "qualify this patent," *Secure Axcess*, 848 F.3d at 1382—the only proper conclusion was a reversal of the decision. The agency does not have statutory authority to pursue this decisional route in this case.[4]

That of course does not pre-judge the merits of the patent, or of the original petition for Board review. Assuming no other statutory obstacles, the patent and its claims are subject to review in a district court action, or in the course of other Board reviews. Since the validity of the patent is tested as of the issuance of the patent, and not on the basis of subsequent events or activities by the owner, the litigation history of the issued patent is irrelevant for that reason, as well as for the reasons noted in the panel opinion.

---

[4] Though it is not an issue in this case, our precedents make clear that on final written decision from the Board, this court has a constitutional obligation as an Article III court to ensure that final actions by an administrative agency subject to the court's jurisdiction are valid and proper. *See Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1314–23 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 2510 (2016); *see also Marbury v. Madison*, 1 Cranch 137, 177 (1803).

In sum, the panel opinion in *Secure Axcess* fits comfortably in this court's tradition of carefully considered opinions based on precedent and respect for legislative requirements in the law. The obituaries being issued for CBM reviews in consequence of *Secure Axcess* are at best premature. In another few years they may be appropriate if Congress does not renew the statute or something like it; in the meantime, the court properly declined further review of the matter in this case.